(June 24, 1897.)

O'FARRALL v. KENNEDY.

[49 Pac. 313.]

MORTGAGE TO SECURE FUTURE ADVANCES—FORECLOSURE OF SAME.— K., desirous of starting a newspaper in Boise, requested a loan, to be repaid in one year, with interest. A subscription was gotten up, and $5,500 subscribed. A mortgage was executed to secure the repayment of the same. But $3,050 of said sum was paid by the subscribers. *Held*, under the evidence, that said mortgage was

given to secure future advances, with full knowledge on the part of
the mortgagor that the loan to him of said entire sum of $5,500
was contingent upon the collection of the same from said sub-
scribers.

(Syllabus by the court.)

APPEAL from District Court, Shoshone County.

John R. McBride, for Appellants.

The plaintiff's assignor makes a contract, by which he
agrees to advance to the defendant, J. M. Kennedy, the amount
of $5,500. That this was to be on demand—on call—is clearly
proven by two things which are undenied: 1. The taking of
Kennedy's note; and 2. The nature of the enterprise, in which
the money was to be placed was such that its success depended
on having not a part but the whole amount. Having reduced
the sum from $10,000 to $5,500, the absolute necessity that
the latter sum would be required could not be questioned.
Nothing in the contract, or in the testimony, indicates that,
when he gave his note for $5,500 the party who took the secur-
ity for its repayment had any thought that he could advance
one-third or one-half of the amount and refuse to complete
his agreement and still have his security to the extent of that
advance. The nature of the enterprise, for which Kennedy
was borrowing this money, was such that no half compliance
with the contract would permit such a construction to be
placed on it. The money was to be used in a particular
scheme; a scheme in which Regan's *cestuis que trust* were per-
sonally deeply interested, and to allow them to entrap a man
into a scheme by a distinct agreement that he should embark
money in it, then fail to keep their contract, and; by failing,
ruin the whole purpose, which all had in view, and impose the
consequence upon him, would be a fraud so gross that no court
could sanction it. Even at law a party to a sealed instrument,
the covenants of which he has broken, cannot recover; much
less will a court of equity allow one redress who comes to it
for relief after violating his agreement. If A agrees under
seal with B to do a certain thing, in consideration of which B
binds himself to pay a sum of money, a suit on the instrument
will not lie until A has performed his agreement. Any failure

on the part of A is a breach of his contract, and leaves him without a remedy on the instrument. If B has been benefited and accepts the benefit, he may be held liable to the extent of the benefit received over and above the injury which the other's failure has inflicted on him. But this remedy is not given on the instrument because its obligations have been broken, but it is given by a special action on an implied new contract for the benefit received. This action, though equitable in nature, is permitted at law and distinctly repudiates any right under the original contract. A series of cases have established this rule and it is old as it is well settled. (*Phillips v. Butler,* 8 Johns. 392; *Freeman v. Adams,* 9 Johns. 135; *Hasbrouck v. Tappan,* 15 Johns. 203; *Langworthy v. Smiths,* 2 Wend. 591.) There is still another reason why this contract of mortgage cannot be enforced. A mortgage is a contract under seal, and its promises cannot be varied by parol. This precise question has been decided. (*Stoddart v. Heart,* 23 N. Y. 556.)

W. B. Heyburn, for Respondent, cites no authorities upon the points decided.

SULLIVAN, C. J.—This is an action to foreclose a mortgage. The complaint contains the usual allegations. The answer admits the execution of the mortgage; denies that any payments had been on the note secured by said mortgage, and that any sum whatever is due thereon; and, as a further defense, states the history of the transaction as viewed by defendants, and alleges failure of consideration, breach of contract, and fraud and misrepresentation in procuring said mortgage. A trial was had, and the court made findings of fact and conclusions of law in favor of the plaintiff; and judgment and decree for the sale of the property described in the mortgage were rendered and duly entered. A motion for a new trial was made and denied, and the appeal is from the order.

The facts necessary to an intelligent understanding of this case are as follows: It appears that defendant J. M. Kennedy, of Anaconda, Montana, a newspaper man, was anxious to publish at Boise City, Idaho, a Democratic newspaper, and in March or April, 1892, addressed a letter to one J. M. Miller,

then a resident of Boise City, in regard thereto, and on April 4th of that year Miller replied to said letter. After stating that the Democrats of Boise City to whom he had shown said first-mentioned letter were pleased with it, and that the outlook was good for procuring aid in the establishment of such newspaper, he says: "With your knowledge of journalism, and thorough training in everything connected therewith, and with my rustling, we can get there, if we can only get money put up to start on a good basis." It appears that further correspondence was had between said Miller and defendant Kennedy, which resulted in Kennedy coming to Boise City to look the field over. That he was introduced to the leading Democrats, and represented that he was desirous of starting a Democratic newspaper in said city, and thereafter said Kennedy presented a written proposition, addressed "To the Democrats of Boise City and Vicinity," in regard to establishing such newspaper. He proposed that any number of members of said party should advance him $10,000 as a loan for a period of one year, on which he would pay interest; said money to be advanced on the promissory note of said Kennedy, secured by first mortgage on certain unencumbered real estate (describing it), and, if that was not deemed sufficient security therefor, he would give a good indorser on said promissory note. That said $10,000 should be placed in the bank of Boise City to the credit of said Kennedy, to be applied on the purchase of all necessary material for the establishment of said newspaper; and, with a view of harmonizing conflicting interests, said Kennedy proposed to purchase the entire plant of the newspaper known as the "Idaho Democrat," if that could be done as set forth in said proposal; if not, then to establish and conduct a newspaper independently of that journal. Said proposition was dated at Boise City, May 11, 1892, and was good for five days. Thereafter certain gentlemen of Boise City started a subscription for the purpose of raising money to assist said enterprise. Said subscription list is dated May 14, 1892. It was thereafter ascertained that the $10,000 asked for by Kennedy could not be raised, and that no larger sum than $5,500 was subscribed. Appellant Kennedy was fully advised of that fact, and subsequently withdrew that

part of his proposition whereby he had offered to give an indorser on said promissory note. He was advised on August 8, 1892, that said $5,500 was in subscriptions, and not then collected. He thereupon executed his promissory note for $5,500, and signed the mortgage to secure the payment thereof, but did not acknowledge the execution of said mortgage until September 21, 1892. On August 8, 1892, $1,500 was advanced to Kennedy; and thereafter other sums, amounting in all to $3,050, were collected from said subscribers and paid to him. That, at the times of signing and acknowledging the execution of said mortgage, appellant was fully advised that all of said $5,500 had not been collected from the subscribers, and as to the probability of the subscriptions not being paid. With full knowledge of these facts, he signed said mortgage and note on August 8th, and acknowledged the execution of the mortgage on September 21, 1892. He also executed a chattel mortgage on said newspaper plant to secure the money so advanced, some time after the execution of said promissory note, and after he was fully advised that all of the subscriptions had not been collected. The record fails to show that anyone guaranteed the collection of the $5,500 so subscribed, and it does show that Kennedy himself collected at least $200 of it. The sixth fact found by the trial court is as follows: "I further find that the sums of money advanced on behalf of the said commitee to said Kennedy were derived from a subscription offered in evidence by the plaintiff, and attached to the deposition of S. H. Hays, and marked exhibit 'B,' which said subscription list contained the names of a number of subscribers to the fund for the purpose of starting said paper, and the subscriptions on said list amounted in the aggregate to $5,500; that, because of said subscription amounting to said sum, the amount of the note and mortgage given by the said Kennedy to the said Regan as trustee for the committee was fixed at said sum of $5,500. And I further find that only $3,050 of the said sum of $5,500 so subscribed as aforesaid was ever paid in to the hands of the committee, and for that reason said Kennedy only received the said sum of $3,050, but I find from the evidence that the said Kennedy was thoroughly conversant with the method and means by which said

money which the said committee had undertaken to furnish him was to be received; that during the month of June, 1892, the said Kennedy saw the said subscription list, and knew from what source the said money was expected to be derived. I further find that at the time of the making of the payments on August 8 and September 1 and September 26, 1892, the said Kennedy was fully advised of the fact that no more than the sum of $3,050 on account of said subscriptions was received by said committee. And I further find that, with full knowledge of the condition of said subscriptions, as to their payment, and of the fact that the moneys received by said Kennedy were to depend upon the payment of said subscriptions, the said Kennedy on the twenty-first day of September, 1892, made, executed, acknowledged, and delivered the mortgage herein sought to be foreclosed to the said Regan as trustee for the said committee, and that about the said twenty-first day of September, 1892 (the date not being definitely fixed), the said Kennedy, with a full knowledge of the facts aforesaid, made, executed, and delivered to the said Regan, as trustee of the said committee. a chattel mortgage upon the printing plant and outfit procured by him for the purpose of starting the paper under the agreement with said committee as aforesaid, to further secure the payment of the said sum of $5,500 expressed in said note." We have not only carefully examined, but re-examined, the evidence in this case, and think that it clearly warrants said finding of fact, and all the facts found by the court. We have no doubt that the defendant had full knowledge of the fact that the payment by the committee to him of the sum named in the promissory note and mortgage was contingent upon the collection of the various sums subscribed by those signing said subscription list. We think the findings of fact and conclusions of law are amply sustained by the record, and that no error was committed in the refusal to grant a new trial. The judgment of the court below is sustained, with costs in favor of the respondent.

Huston and Quarles, JJ., concur.